### DETRICK and others *v.* BALFOUR and others.

(*Circuit Court, D. California.*   August 22, 1881.)

1. CONTRACT—CONSTRUCTION—"CHANGE IN DUTIES"—REV. ST. § 2838.

   A written contract entered into at San Francisco, in the state of California, for the sale of goods to arrive from Calcutta, contained this clause: "Any change in duties to be for or against purchasers." The rate of duty on the bags constituting the subject-matter of the contract has not been changed since the contract was made. The amount of duty actually paid was, however, considerably less than the amount which it would have been necessary to pay on the same goods if they had been entered at the time when the contract was made, owing to a change, meanwhile, in the estimated value of the rupee, in which currency, under section 2838 of the Revised Statutes, the invoice of such merchandise was required to be made out. In an action by the purchaser of the goods to recover the amount of this difference, *held*, the parties, by the words "change of duties," intended a change in the rate of duty by authority of congress, not a difference in the amount of duty merely.

2. SAME—SAME.

   *Held*, further, that the court would put that construction upon these words whether it viewed them in the light of the general and legislative history of the country, or in the light of the common understanding as to the meaning of these words, when used in this connection, among the merchants of the mercantile community where the contract was made; *i. e.*, those of San Francisco.

SAWYER, C. J.   On the fourteenth of November, 1879, the plaintiffs and the defendants, interchangeably, entered into the following contract:

"No. 172 p.           SAN FRANCISCO, 204 California street, Nov. 14, 1879.

"I have this day sold to Messrs. E. Detrick & Co., on account of Messrs. Balfour, Guthrie & Co., five hundred thousand (500,000) standard 22 by 36 grain sacks, *ex* Evelyn, from Calcutta, at the duty paid price of nine and five-eights cents (9⅝ cents) each, U. S. gold coin, on delivery in good order and condition on the fifteenth day of May next. Marks and numbers to be declared on receipt of invoice, and allowance on damaged bales, (if any,) failing a satisfactory adjustment, to be submitted to arbitration. Contract void, should vessel not arrive by or on the fifteenth of May, 1880. It is at sellers' option, on or before first prox., to change the character of this contract to positive delivery, at nine and three-quarters cents (9¾ cts.) each, for the first day of June.

"Approved: Balfour, Guthrie & Co.

"WILSON WHITE, Broker.

"Any change in duties to be for or against purchasers.   B., G. & Co., by R. B."

All the material facts of the case, except the testimony as to the meaning attributed by the merchants of San Francisco to the memorandum at the foot of the contract, "any change in duties to be for

or against purchasers," are contained in the stipulation filed in the cause.

The duty on the bags mentioned in the contract was, at the time when it was entered into by the respective parties, 40 per cent. *ad valorem.* This rate of duty has never been changed.

Sections 2838 and 3564 of the Revised Statutes of the United States provide as follows:

"Sec. 2838. All invoices of merchandise subject to a duty *ad valorem* shall be made out in the currency of the place or the country from whence the importation shall be made, and shall contain a true statement of the actual cost of such merchandise in such foreign currency or currencies, without any respect to the value of the coins of the United States, or of foreign coins by law made current within the United States, in such foreign place or country."

"Sec. 3564. The value of foreign coin, as expressed in the money account of the United States, shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated annually by the director of the mint, and be proclaimed on the first day of January by the secretary of the treasury."

The merchandise which was the subject of the foregoing contract was purchased in Calcutta, and the invoice value thereof was made out in rupees, the currency of that place. The value of the rupee in the currency of the United States, on the fourteenth day of November, 1879, the time of making the contract, was, as proclaimed by the secretary of the treasury on the first day of January, 1879, 44.40 cents. The value of the rupee in the currency of the United States, at the time when said merchandise was imported into the United States, and entry thereof made at the office of the collector of customs for the port of San Francisco, which was after the first day of January, 1880, was, as proclaimed by the secretary of the treasury on the first day of January, 1880, 39.70. The dutiable value of the merchandise was, therefore, ascertained by reducing the invoice valuation in rupees to the currency of the United States at the rate of 39.70 cents per rupee. The full amount of duties on the merchandise, estimated on the value of the rupee at 39.40 cents, was $9,466, which was the amount actually paid. If the duties had been estimated on the value of the rupee at 44.40 cents, as proclaimed by the secretary of the treasury, January 1, 1879, they would have amounted to $10,587.20. The difference in the amount of duties arising from the above-mentioned difference in the value of the rupee in the currency of the United States, was, therefore, $1,121.20. It is to recover this amount that the present action is brought by E. Detrick & Co., the purchasers of the goods.

The plaintiff's counsel makes a very ingenious and plausible argument to show that the words "change in duties," in the clause in question, means not a change in the *rate* of duties made by law, but a change in the *amount* of duties from whatever cause the amount of duties to be paid may be affected. But, after a careful consideration of the subject, I find myself unable to adopt that view. The word "duties," as used in this clause, doubtless, means the tax, charge, customs, toll, or tariff levied by act of congress upon the goods—in this case, bags—imported.

Congress, in its action upon the subject, regulates the *duties*, properly so called, generally, if not always, expressly and directly by prescribing some uniform rate of duties, either specific or *ad valorem*. And generally, doubtless, unless there is something in the surrounding circumstances to indicate a different sense, men, also, in their business transactions, and in ordinary conversation in speaking of the duties on imports, use the term with reference to the charge so directly and expressly imposed according to the rate and rule prescribed. They are spoken of and considered in their immediate, direct, and not in their remote or incidental relations.

We all know, as a matter of general, national, political, as well as legislative and statutory history of the country, that during the late civil war the demands for large revenues induced frequent and continual changes in our revenue laws. The rates of duties, as well as the subjects upon which they were imposed, were constantly changed, as necessity and experience suggested modifications, and these changes continued after the close of the civil war, as the demands for large revenues diminished, while we were getting back to a peace basis again. These frequent changes in the laws imposing duties presented a new element of uncertainty for the merchant to take into consideration in making contracts to be fulfilled in the future, and, doubtless, the introduction of the clause in question had its origin in such a condition of things. The direct and usual, if not the only, mode of changing duties, when that is the purpose to be accomplished, is to change the rate, whether the duties are specific or *ad valorem*, and the language adopted in the contracts, "change of duties," to provide against these contingencies, is well adapted to the purpose, and was doubtless adopted with reference to such intentional, direct, and express changes of duties. When the purpose of congress is to change the duties it manifests that purpose by legislating directly upon the subject. If, in other legislation, it in some instances affects the amounts of duties required to be paid, that effect

is incidental and purely accidental. And when parties contract with reference to changes of duties, in all probability they would only contemplate the intentional changes in the duties usually depending on changes of rate, and not those rare, unlooked-for instances where the amount of the duties is accidentally affected as incidental to legislation or official action designed to effect other objects. If parties contemplated protecting themselves against remote, accidental effects, they would be very apt to use language to clearly manifest such a purpose. The plaintiff's counsel insist that the parties could not have contemplated a change in the "rate" of duties; that if they had they would have inserted the word "rate" in their contract, and as they have not used the word it cannot be interpolated. It may just as well be argued that they did not mean the "amount" of duties; if they had, the word "amount" would have been used, and we are no more authorized to interpolate the word "amount" than "rate."

A plain, common-sense view of the question must be taken. The change in the amount of the duties in this instance resulted from a change in the value of the rupee, or the money of the country whence the goods were imported. Section 2838, Rev. St., requires the invoice to be made "in the currency of the place or country from whence the importation shall be made, and shall contain a true statement of the actual cost of such merchandise in such foreign currency." etc. And section 2906, Rev. St., requires the collector to adopt the actual market value, *at the period of exportation* to the United States, in the principal markets of the country whence the goods are imported, and the period of exportation is the day of sailing from the foreign port. *Samson* v. *Peaslee*, 20 How. 571. And duties must be paid in money of the United States. Rev. St. § 3473. The value of all foreign coins must be estimated in money of the United States by the director of the mint, and proclaimed by the secretary of the treasury on the first of January of each year. Rev. St. § 3564. The object seems to be to get at the real, actual value of the foreign coin in the money of the United States. *Collector* v. *Richards*, 23 Wall. 246. By obtaining the actual value of the foreign coin in our own money, we obtain the actual value of the goods estimated in foreign coins in the money of the United States. In this case there was a change in the value of the rupee, between the time of the contract and the time of the importation, by which the value of the rupee was lessened, consequently the value of the goods was diminished. There was a diminution of the dutiable value of the goods,—a change, a

diminution in the value upon which duties were to be paid, and not a change in the duties to be paid upon that value. The result was the payment of a smaller *amount* of duties, not because of a "change of duties," but because the value of the goods upon which the duties were paid was smaller. This resulted from no action of congress, or of anybody else acting under the authority of congress, intended to affect either the amount or rate of duties, but was incidental to the exercise of other powers to regulate the money of the country, and purely accidental. It might as well be claimed that a diminished or increased amount of duties, resulting from a diminution or appreciation of the dutiable value of the goods after the contract and before importation, resulting from any other cause, is within the terms of the clause of the contract in question. Had the parties contemplated a change in the amount to be paid resulting from a change in the value of the rupee, it is more reasonable to suppose that they would have made the clause read something like this, "Any change in duties, *or in the value of the currency of India, (or the rupee,)* to be for or against the purchaser," than to suppose the construction now claimed for the clause in question to have been contemplated. The change in value of the rupee is quite as distinct and independent a contingency to be considered and provided for as the "change in duties," and the language suggested would be far more apt and appropriate to express the additional idea. The more natural construction of the language used is to limit it to a direct change in the rate of duties by congressional legislation, or by authority of congressional legislation, and not to extend it to changes in amount of duties rarely affected, and incidentally and accidentally resulting from legislation and official action intended to effect other objects having no reference to duties or revenues.

This is the conclusion to which my mind has come from a consideration of the language itself, viewed in the light of the general and legislative history of the country, without considering the testimony of witnesses relating to the general understanding of merchants as to the purpose and signification of the clause in question.

If, however, testimony is competent to show what the purpose and signification of the clause is as generally understood in the mercantile community where the contract is made, then the testimony clearly shows that it is understood to be limited to changes in the rate of duty by authority of congressional legislation, as I have already held. The plaintiffs' counsel insist that if this testimony is admissible, it can have no significance for the reason that the provision now found

in section 3564, Rev. St., was not adopted till long after the war, and long after the custom having its origin in the war and its attendant legislation of introducing the clause in question had been established; and at that time the question whether a change in foreign coin would work a change in the duty could not have arisen. Concede this to be so, then, if such a question could not have arisen for that reason, it follows that the parties making those contracts at that time could not specifically have contemplated embracing such a change in the amount of duties in the term "change of duties," as used in these contracts, and it is not probable that the sense has since been extended. In my judgment, in any view I can take of the matter, such a change in the amount of duties to be paid was not contemplated by the parties when the contract was made, and is not embraced in the words "change in duties."

There must be a finding and judgment for defendants, and it is so ordered.